**CONFIDENTIAL – FILED UNDER SEAL**

IN THE UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| MINNESOTA MINING AND MANUFACTURING COMPANY & 3M INNOVATIVE PROPERTIES COMPANY,<br><br>Plaintiffs,<br><br>v.<br><br>ACCO BRANDS, INC., and AMERICAN COVERS, INC.,<br><br>Defendants. | Civil Action No. 01-607 (JRT/AJB)<br><br>Judge John R. Tunheim<br>Magistrate Judge Arthur J. Boylan |
| 3M COMPANY, and 3M INNOVATIVE PROPERTIES COMPANY,<br><br>Plaintiffs,<br><br>v.<br><br>VELO ENTERPRISE CO., LTD.,<br><br>Defendant. | Civil Action No. 02-4891 (JRT/AJB)<br><br>Judge John R. Tunheim<br>Magistrate Judge Arthur J. Boylan |

**MEMORANDUM IN SUPPORT OF**
**PLAINTIFF 3M'S UNOPPOSED MOTION**
**FOR ISSUANCE OF A LETTER OF REQUEST**

This Court should grant 3M's unopposed motion and issue a Letter of Request to the Superior Court in Ontario, Canada, seeking information from Waterloo Furniture Co., the supplier of several products sold by defendant ACCO that are accused of patent infringement in this case. 3M's patent claims describe gel-filled wrist rests having a gel with specific characteristics. ACCO denies that it knows the source, composition, and properties of the gel

used in the products it buys from Waterloo. 3M therefore has no choice but to seek this information directly from ACCO's supplier.

## I. RELEVANT FACTS

This is a patent infringement action brought by 3M against defendants ACCO Brands, Inc., American Covers Inc. ("ACI"), and Velo Enterprise Co., Ltd. based on their importation and sale of wrist rests covered by U.S. Patent Nos. 5,713,544 and 6,626,403 (the '544 and '403 patents, respectively). Both patents require that the wrist rests contain a gel with particular properties. The '544 patent describes the gel as a *stable elastomeric block polymer.* The '403 patent calls for a gel having an *elastomeric polymeric network.*

Because the composition and physical properties of the gel are important issues in this case, 3M has been seeking this information about ACCO's products for more than a year. 3M first sought this information in Interrogatory No. 4, which asked ACCO to describe: (1) each ingredient in the gel; (2) the step-by-step process to make the gel; (3) all physical properties of the gel; and (4) the identities of the supplier of the gel. See Declaration of Russell J. Rigby Ex. 1, p. 5.

ACCO's initial response was to lodge a vast array of objections, but provide no substantive response. See Rigby Decl. Ex. 2, p. 10. Nearly six months later, ACCO supplemented this response to add additional objections. This time, however, ACCO also provided a substantive response of sorts, stating that it did not have "detailed knowledge regarding the ingredients or methods used to manufacture the gels sufficient to respond to this interrogatory." See Rigby Decl. Ex. 3, p. 8. Additionally, ACCO listed the suppliers of various gel-filled wrist rest products it sells. One of those suppliers was "Waterloo Furniture Co.,"

which is actually Waterloo Furniture Components Ltd. of Kitchener, Ontario, Canada ("Waterloo"). ACCO denies that it knows any details about the gel used by Waterloo.

Waterloo is a wholly owned subsidiary of CompX International, Inc., a Delaware corporation with a principal place of business in Dallas, Texas. 3M has attempted to obtain information about the Waterloo gel by serving a subpoena on CompX in the United States. Thus far, however, CompX has resisted the subpoena on the grounds that Waterloo, though a subsidiary, is an independent company and is located in Canada. See Rigby Decl. Ex. 4. 3M is continuing its efforts to obtain compliance with the subpoena by CompX.

From discovery obtained thus far, it appears that Waterloo is intimately connected with the defendants in this case. Not only has ACCO admitted that Waterloo manufactures many of ACCO's keyboard trays, but documents recently produced by Velo show that Waterloo is a substantial customer of Velo. Among these documents is an agreement between Velo and CompX signed by a representative of "CompX – Waterloo Furniture Component Ltd" and listing Dallas, Texas as the address of CompX. See Rigby Decl. Ex. 5. Email correspondence suggests that ACCO, Velo, and Waterloo were all well aware of each other's existence and roles in producing keyboard trays, which casts considerable doubt on ACCO's professed ignorance of the source of the gel pads. See Rigby Decl. Ex. 6.

All this information suggests that Velo makes the gel that Waterloo uses in the accused wrist rests it sells to ACCO. However, neither ACCO nor Velo will admit that the Waterloo products sold by ACCO contain Velo gel. Both defendants assert they lack knowledge necessary to respond requests for admissions that seek this information. In order for 3M to obtain this discovery, this Court must issue a Letter of Request to the Ontario Superior Court. In its proposed Letter of Request, 3M has narrowly defined the scope of discovery sought from

Waterloo to include only the products it produces for ACCO or its Kensington subsidiary. Given ACCO's professed ignorance of who supplies the gel in its products, testimony from Waterloo is essential and this Court should issue 3M's proposed letter of request.

## II. ARGUMENT

### A. Issuance of 3M's Letter of Request is Necessary and Just.

The Federal Rules of Civil Procedure allow for broad and liberal discovery of "any matter, not privileged, that is relevant to the claim or defense of any party." Fed. R. Civ. P. 26(b). The composition and supplier of the gels used in ACCO's allegedly infringing products are clearly relevant to the claims and defenses presented in this case. This analysis is not changed simply because Waterloo is located outside the United States. Further, ACCO does not oppose 3M's efforts to obtain this Letter of Request. Rigby Decl. ¶ 3.

A letter of request is the medium "whereby one country, speaking through one of its courts, requests another country … to assist the administration of justice in the former country; such request being made, and being usually granted, by reason of the comity existing between nations in ordinary peaceful times." The Signe, 37 F. Supp. 819, 820 (E.D. La. 1941). The authority for U.S. Courts to issue letters of request is provided both in the Federal Rules of Civil Procedure rule and by statute. See Fed. R. Civ. P. 28(b) and 28 U.S.C. § 1781(b)(2). Rule 28 establishes that a letter of request should be issued unless it is unjust or inappropriate. Fed. R. Civ. P. 28(b) ("A commission or letter of request shall be issued on application and notice and on terms that are just and appropriate.") (emphasis added).

Applying this Rule, courts have required those opposing such issuance to show "some good reason" why the letter should not be issued. See, e.g. Zassenhaus v. Evening Star Newspaper Co., 404 F.2d 1361, 1364 (D.C. Cir. 1968); Security Insurance Co. of Hartford v.

Trustmark Ins. Co., 218 F.R.D. 24 (D. Conn. 2003); see also Wright & Miller, Federal Practice and Procedure § 2083 (1994) (further noting that the 1963 amendments to Rule 28 "considerably reduced" the discretion of courts to refuse issuance of a letter of request). Courts have also repeatedly cautioned that in deciding a motion for a letter of request, "the Court will not weigh the evidence that is to be adduced by deposition and will not attempt to predict, whether, in fact, the witnesses will be able to give the testimony which is sought." B&L Drilling Elecs. v. Totco, 87 F.R.D. 543, 545 (W.D. Ok. 1978); see also DBMS Consultants Ltd. v. Computer Associates Int'l Inc., 131 F.R.D. 367, 369 (D. Mass. 1990).

Underlying all decisions on the issuance of a letter of request is the basic principle that the parties and the Court should have all the facts necessary to their claims. Indeed, this Court has even allowed the taking of expert testimony by letters Rogatory, defying the general rule against expert depositions pursuant to letters Rogatory. See American Infra-red Radiant Co. v. Lambert Industries, Inc., 32 F.R.D. 372 (D. Minn. 1963). There, American showed that there was no available equivalent source of expert testimony in the United States and the Court issued the Letter of Request on that ground. Here, 3M faces an equivalent situation. There are two parties that should know the source of the gel: ACCO and Waterloo. Because ACCO says it does not know, 3M can only look to Waterloo for the information.

## III. Conclusion

3M has been seeking the suppliers and composition of the gel in ACCO's products for more than a year. The time has come for complete, straight answers to these questions. Because ACCO asserts it does not know where its gel comes from, 3M must seek answers from its suppliers. Therefore, 3M requests that this Court issue 3M's proposed Letter of Request to begin the process of obtaining this answer from Waterloo.

Respectfully submitted,

3M COMPANY AND
3M INNOVATIVE PROPERTIES CO.

By their attorneys,

Dated: June 9, 2004

s/ Matthew J. Goggin

Alan G. Carlson (#14,801)
Matthew J. Goggin (#210,705)
Russell J. Rigby (#323,652)
CARLSON, CASPERS,
VANDENBURGH & LINDQUIST
225 South Sixth Street, Suite 3200
Minneapolis, MN 55402
Telephone: 612-436-9600
Facsimile: 612-436-9605

Hildy Bowbeer, Esq.
George W. Jonas, Esq.
3M Company
Office of Intellectual Property Counsel
3M Center
P.O. Box 33427
St. Paul, MN 55133-3427